# THE BALTIMORE QUARRIES COMPANY

*vs.*

## JOHN A. GWYER AND PETER ADAMS, Co-PARTNERS, TRADING AS ADAMS AND COMPANY, ET AL.

*Examination of Witness—Calling for Conjecture—Action on Contract—Evidence—Instructions.*

A witness having testified that he did not know why his counsel had sent a communication not in harmony with a certain letter of which such counsel had been informed, it was proper to exclude a question asked of the witness as to how he reconciled the communication with the letter, this calling for a mere conjecture. pp. 381, 382

Defendant's officials having testified that they were not authorized to make such a contract as that which plaintiffs asserted that such officials did make, the exclusion of a question asked of such officials as to whether they had ever made such a contract with another person was harmless. p. 382

In an action against a quarry company for failure, in accordance with its contract, to furnish stone for the purpose of a street paving contract, the plaintiffs being a contracting firm and a corporation controlled by the firm, with which corporation the paving contract was made by the city, *held* that there was legally sufficient evidence tending to show that the corporation, at least, was entitled to recover. p. 385

Where there is legally sufficient evidence to go to the jury as to one of the plaintiffs and not as to the other, a prayer directing a verdict for defendant, so framed as to apply to both plaintiffs, is properly refused. p. 385

One cannot, on appeal, avail himself of the objection that a prayer granted at plaintiffs' request assumed, without legally sufficient evidence, that both of plaintiffs suffered loss by defendant's breach of contract, in the absence of a special exception on that ground. p. 386

That in a prayer granted at the plaintiff's request the word "plaintiff" was sometimes used, and sometimes "plaintiffs," *held* not cause for reversal, considering the prayer in connection with the granted prayers of defendant, in one of which a like varying use of the words "plaintiff" and "plaintiffs" also occurred.

p. 386

*Decided January 11th, 1921.*

Appeal from the Superior Court of Baltimore City (SOPER, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*John Hinkley,* for the appellant.

*J. Albert Baker,* for the appellees.

PATTISON, J., delivered the opinion of the court.

This is an appeal from a judgment recovered by John A. Gwyer and Peter Adams, partners, trading as Adams & Company, and The Continental Contracting Company, a body corporate, against the Baltimore Quarries Company. The declaration filed in this case, in addition to the common counts, contains a special count in which it is stated,

> "the plaintiffs and defendant entered into a contract whereby defendant was to furnish the plaintiffs with all of the crushed Trap Rock needed for a certain contract known as and designated as City Contract No. 11, at and for the price of one dollar and sixty-five cents per ton, to be delivered as ordered by plaintiffs, on certain streets and alleys in Baltimore City as specified in certain plans and specifications, submitted to the defendant; and that plaintiffs purchased and used said crushed rock on said contract as agreed until they were further prevented from using it by the act of defendant in refusing to furnish same. That the plaintiffs have always been ready and willing to carry out and

perform their part of the said contract, but, notwith-
standing, the said defendant refused and has ever re-
fused, to furnish said crushed rock as agreed, thereby
causing the plaintiffs great loss and damage."

The defendant pleaded never indebted and never promised
as alleged. In the trial of the case, three exceptions were
taken to the rulings of the court, two upon the evidence, and
one upon the prayers.

We discover no error in the court's ruling upon the evi-
dence. In the first of these, after John A. Gwyer, one of the
firm of Adams & Company, had testified that the terms of
the contract under which the stone was bought by the plain-
tiffs from the defendant were embraced in a letter received
by the plaintiffs that had been lost, his attention, upon cross-
examination, was called to a letter dated April 13, 1917, re-
ceived by the counsel for the defendant from J. Albert Baker,
plaintiffs' counsel, in which the latter had said, "my clients
inform me that there was a *valid oral* contract existing be-
tween them" and the Baltimore Quarries Company. The
witness in response to a number of questions propounded to
him in relation to what was regarded by defendant's counsel
as a discrepancy between the evidence of the witness and the
statement in the letter of his counsel, stated that he, so early
as March, 1917, informed Mr. Baker of the letter mentioned
by him and talked to him about its contents, and why he,
Mr. Baker, in his letter spoke of the contract as an oral one
he did not know, and said that he was not responsible for the
statements so made by Mr. Baker; and when again asked
why his counsel should have made the statement, he suggested
to defendant's counsel to ask Mr. Baker why he made the
statement. It was then that the witness was asked "if you
told your counsel that in March, 1917, * * * how you recon-
ciled that with the letter of your counsel * * * on April 13,
1917, in which he says there was a valid oral contract exist-
ing between them."

The question was objected to, the objection was sustained and an exception noted to the ruling of the court thereon.

The witness having said that he told Mr. Baker of the letter and its contents before the letter from the latter to the defendant's counsel was written, and that he did not know why the statement had been made by Mr. Baker, any attempt on his part to reconcile the alleged discrepancy would have been mere conjecture on his part, and was, we think, properly excluded.

The second exception is to the court's refusal to permit the defendant to ask his witness, Welsh, assistant manager of the defendant company, "did you, or Mr. Alexander (the general manager), ever make a contract with another contractor for a large quantity of stone necessary for any particular contract; did you ever make a contract in that way?"

Both Welsh and Alexander testified that no contract was made by either of them with the plaintiffs, for the sale of all the stone required in said contract with the city for paving said streets and alleys. And further stated that they were not authorized to make any contract such as that said to have been made with the plaintiffs. With this testimony before the jury, it cannot, we think, be properly said that the defendant was injured by the court's refusal to allow this question to be answered, even should it be regarded as admissible.

This brings us to the rulings upon the prayers. The plaintiffs offered two and the defendant four prayers. Both of the plaintiffs' and all of the defendant's, except its first prayer, were granted. The rejected prayer of the defendant asked the court to direct a verdict for the defendant because of a want of legally sufficient evidence entitling the plaintiffs to recover under the pleadings in the case.

Peter Adams, or in Italian, Pietro D'Adamo, and John A. Gwyer, compose the plaintiff firm of Adams & Company, and they, with the wife of Gwyer, own the stock of the Continental Contracting Company, the plaintiff corporation, Adams being its president, and Gwyer its secretary and treasurer.

It seems that in 1916 some of the contract work was done by them as a firm, and some by them in their corporate capacity. In that year the firm contracted with the city to pave certain streets and alleys under a contract known and designated as Contract No. 9. Thereafter, as stated by Gwyer, the city asked for bids upon what was designated as Contract No. 11. Before submitting a bid thereon he, in September, 1916, called upon the Baltimore Quarries Company, carrying with him the plan and specifications of the work under said contract, and asked them, the Baltimore Quarries Company, to submit a price for the stone to be delivered on the contract at the different locations, and that he, with certain of the officials and employees of that company, including Mr. Alexander and Mr. Welsh, went over the blueprint and specifications and "the price of $1.65 per ton for the stone delivered on the whole contract" was arrived at by them. Thereafter they wrote him a letter stating that they would furnish all the stone on said Contract No. 11 for $1.65 per ton. This letter, however, was lost and although he has made diligent search, it cannot be found. He testified, however, that he had a similar letter written him August 1st, 1916, by the defendant company, in connection with Contract No. 9, and that letter was like the one received in this case, with the exception that it (the one received in this case) was addressed to Adams & Company, and The Continental Contracting Company; and the price was $1.65 instead of $1.70.

The letter of August 1, 1916, written in connection with Contract No. 9, is as follows:

"Baltimore, August 1, 1916.
"Mr. John A. Gwyer,
  "934 Franklin Road,
    "Baltimore, Md.
"Dear Sir:
  "Replying to your inquiry of recent date, we beg to quote you as follows on stone for City Contract No. 9. Concrete Alleys:

"Crushed Trap Rock, for the sum of $1.70 per ton 2,000 lbs.
"Awaiting your further kind inquiries, we are,
   "Yours very truly,
              "The Baltimore Quarries Co.,
              "By Thomas W. Welsh, J. F.,
                        "Asst. to Manager."

The witness testified that, after receiving the letter in this case from the defendant: "I submitted a bid for the work and was the successful bidder for the contract, and it was awarded to us, and immediately upon the awarding of the contract to us by the City of Baltimore, I notified the Baltimore Quarries Company of the fact, stating we were ready to accept the stone, and they said 'All right,' they were ready to deliver it, and they did deliver some of it." The amount delivered by them was 390 tons. They refused, however, to deliver more at $1.65 per ton, saying that, on account of the high price of dynamite and labor, they could not longer sell the stone at $1.65, but would furnish it for the succeeding thirty days at $2.05 per ton. The amount of stone required to finish the work was 2,958.44 tons, for which was paid $2.00 per ton, or $5,916.42, $1,035.46 more than the alleged contract price for said stone; the judgment recovered in this case being for $1,035.43.

The record discloses that the contract with the city, when executed, was with The Continental Contracting Company, it being executed on the part of that company by Pietro D'Adamo, its president, and John A. Gwyer, its secretary and treasurer.

The evidence discloses that The Continental Contracting Company was incorporated in 1915, and thereafter one Henry Kaufman became its president. In 1916 he decided to sell his stock in the company and sever his connection therewith, and as stated by Gwyer, during the period it required to get things straightened out, Mr. Adams and himself, as a firm, did some contract work, including that done under Contract

No. 9, for the City of Baltimore.   When the work under
Contract No. 11 was to be done, the affairs of the corporation
had been straightened out and, therefore, they contracted with
the city in their corporate capacity, that is, as the Continen-
tal Contracting Company.   The witness Gwyer testified that
he explained to Mr. Welsh, the assistant manager of the de-
fendant corporation, that the contract in this case had been
taken in the name of the Continental Contracting Company,
and Mr. Welsh said to him "you can make the bills that way,
that is all right, we will not change, we had rather deal with
you personally than the corporation."   It may also be said
that in the correspondence between the parties, following the
defendant's refusal to continue furnishing stone under the
alleged contract, the letters of the defendant were addressed
to:

<blockquote>
"Messrs. Adams & Company,<br>
"The Continental Contracting Company,<br>
"Baltimore, Maryland."
</blockquote>

With the production of the evidence stated, it cannot, we
think, be properly said that there was no legally sufficient evi-
dence tending to show that The Continental Contracting
Company, at least, was entitled to recover.   If there was evi-
dence legally sufficient to go to the jury as to one of the plain-
tiffs and not to the other, the prayer should not have been
so framed as to have applied to both, and the prayer, in our
opinion, was properly refused.

The jury by the plaintiff's first prayer were instructed that
if they found "that the plaintiff and defendant entered into
a written contract whereby the defendant was to furnish
plaintiffs all the stone necessary for a certain contract, known
as City Contract No. 11, at the price of $1.65 per ton, and
that the plaintiffs were ready and willing on their part to
fulfill said contract; that the defendant refused to carry out
its part of the contract (if the jury so finds) and further finds
that the plaintiff, by reason of such refusal of defendant, has

sustained damage, then the plaintiff is entitled to recover in this action for the actual loss and damage sustained by them in consequence of said refusal." The objection urged against this prayer is that at times the word *"plaintiff"* is used, while in others *"plaintiffs"* is used, therefore confusing the two plaintiffs. The contention of the defendant is that to establish the cause of action there must not only be a contract with both plaintiffs, but also a loss by both plaintiffs, and that there is no evidence of any loss suffered by Adams & Company, who were not parties to the contract with the city, and for which contract the stone was bought and under which the loss is said to have been sustained because of the failure of the defendant to furnish the stone to be used thereon. But if it be true, as claimed, that there is no legally sufficient evidence in the record to show that Adams & Company sustained any loss, because of the defendant's failure to supply the stone under the contract in this case, there was no special exception taken to the prayer because of such alleged want of evidence, as required under the statute in such cases, and that there was not sufficient evidence in the record does not seem to have been in the mind of the defendant's counsel at that time, for in the instruction asked for and obtained by him in his fourth prayer, the jury was told that if they found that a contract for future deliveries was made by the defendant with Adams & Company only, and a loss was suffered by The Continental Contracting Company only by failure of the defendant to deliver stone, then the verdict of the jury must be for the defendant.

The use at times of the word *"plaintiff,"* and at others of *"plaintiffs"* in the plaintiff's first prayer might ordinarily be confusing to the jury, but when it is considered in connection with the granted prayers of the defendant, especially its fourth prayer, the confusion, if any, caused by the plaintiff's prayer when standing alone, disappears. It may also be said that the varying use of said words *"plaintiff"* and *"plaintiffs"* is not found alone in the prayers of the plain-

tiff, but is also found in the defendant's second prayer, and so it may be that the use of said different words is due to errors made in copying the original prayers, or in printing the record, but in any event, we do not think the prayer bad because of the varying use of said words. The only remaining prayer for our consideration is the plaintiff's second prayer on the measure of damages, and this is conceded to be "unobjectionable if the plaintiffs are entitled to recover." As we find no errors in the rulings of the court, the judgment below will be affirmed.

*Judgment affirmed, with costs to the appellee.*